IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DARRIAN DANIELS,**  **Plaintiff,**  v.  **ANTHONY WILLS, TYSON CHOATE, QUINN BAKER, JAKOB UPTON, and KEN MODGELIN,**  **Defendants.** | Case No. 23-cv-2061-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Darrian Daniels, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Daniels alleged the defendants acted with deliberate indifference when they placed him in a suicide cell without water and a working toilet, denied him access to the yard and showers, and denied his access to food trays. This matter is currently before the Court on Daniels's "Notice" to the Court, which seeks help from attacks by other inmates (Doc. 103). Anthony Wills filed a response to the notice (Doc. 107).

## BACKGROUND

Daniels's allegations in this case focus on the conditions of his cell in North 2 Restrictive Housing Unit. He alleges that he was placed there for refusing to take a TB (tuberculosis) test. Daniels previously sought injunctive relief, requesting to be removed

from the cell (Doc. 1). The motion was denied as moot because Daniels was transferred from the cell at issue in his Complaint (Doc. 45). Daniels subsequently filed a motion to reconsider, arguing that he had been transferred to another condemned cell (Doc. 50). He argued the conditions in the new cell were just as bad as the original cell. The Court held two evidentiary hearings on the motion to reconsider (Docs. 80, 93). Daniels received a TB blood test during one of the hearings. The Court was informed that, presuming Daniels tested negative for TB, he would be released from segregation (Docs. 93, 94). The Court denied as moot Daniels's request for reconsideration of his motion for a preliminary injunction (Doc. 94).

After denying Daniels's motion for preliminary injunction, Daniels began filing "Notices" with the Court regarding an attack by an inmate worker (Docs. 97, 98, 101, 103, 105). Daniels acknowledged that he was moved from segregation and placed in the West Cellhouse (Doc. 97). But upon his arrival, inmate workers threatened him because he filed lawsuits against the warden and other officers (*Id*. at pp. 1-2). He subsequently filed a motion for help, stating that an inmate worker threw hot food on him, causing burns (Doc. 98). He alleged that he was being denied medical care for his severe burns (*Id*.). The Court denied Daniels's motion because it was unrelated to the claims in his lawsuit (Doc. 100). The Court directed Daniels to file a new lawsuit about these unrelated incidents.

Instead of filing a new lawsuit as directed, Daniels filed a second Notice, again informing the Court that an inmate worker threw hot fluids on him, causing severe burns (Doc. 101). Daniels requested an order from the Court removing him from Menard (*Id*.).

He stated that he believed Warden Wills directed the attack against him by the inmate worker (*Id.*). The Court again denied his request for injunctive relief because Daniels failed to provide any evidence to support his claim that the defendants in this case were behind the inmate attack (Doc. 102).

On February 5, 2024, Daniels filed another Notice regarding an attack by an inmate worker (Doc. 103). Daniels again stated that an inmate worker threw hot fluids on him (*Id.*). He acknowledged that he was receiving treatment for those injuries in the healthcare unit (*Id.*). But Daniels alleged that after returning from treatment, on January 31, 2024, he was transferred back to the cellhouse where the assault occurred. One hour after arriving back to the cellhouse, he was assaulted by another inmate worker who cut him with a knife (*Id.*). Daniels noted that he filed a grievance, but he did not believe that Wills would respond to the grievance. He stated his belief that Wills orchestrated the attacks (*Id.* at pp. 1-2). He noted that workers were informed by correctional officers that Daniels was a snitch who reported on workers. Daniels argued that the allegations made him a "dead man walking" in the West Cellhouse. He requested instructions on how to proceed (*Id.* at p. 3).

Although this new attack also appeared to be unrelated to the claims in his lawsuit, given the serious nature of the allegations and Daniels's claim that Warden Wills orchestrated his placement in the West Cellhouse, the Court directed Wills to respond to the newest Notice (Doc. 104).

Before Wills filed a response, Daniels filed a second Notice with the Court providing updated information about his injuries and care (Doc. 105). He stated that he

was housed in the healthcare unit for three weeks due to the severity of his burns. He further alleged his life was in danger at Menard (*Id.* at p. 2). He stated that an internal affairs officer informed him that they would tell the Court that Daniels was lying about everything. The officer further stated that they controlled the records. Daniels alleged that officials would lie to the Court to cover up their treatment of him and that he continued to receive threats of physical harm from officers and inmate workers (*Id.*). He also noted that he filed a grievance about missing property.

In response, Warden Wills stated in an affidavit that he had no prior knowledge of the attack on Daniels. He did not learn about the attack until after it occurred (Doc. 107-1, p. 2). Daniels was moved from the West Cellhouse to North 2 and then to the healthcare unit (*Id.*; Doc. 107-3). Although Daniels was ultimately transferred back to the West Cellhouse, the inmate involved in the incident was no longer housed in the West Cellhouse (Doc. 107-1, p. 2). Wills also indicated that he only received one grievance from Daniels in January regarding missing property (Doc. 107-2, p. 1). Further, correctional counselor Sara McClure submitted an affidavit stating that she recently met with Daniels at his cell front (Doc. 107-5). Although she spoke with him and asked if he had any concerns, Daniels failed to note any fear for his safety or need for protective custody (*Id.*). McClure attested that if Daniels had made such a complaint, she would have reported the concerns to the cellhouse sergeant (*Id.*).

On March 1, 2024, Daniels filed another Notice advising the Court that he was placed under investigative status and moved to segregation on February 26, 2024 (Doc. 108). An internal affairs officer investigating the situation informed Daniels that he

was placed in segregation because officials received reports that his life may be in danger (*Id*.). Daniels believes that his placement in segregation is a form of retaliation and in response to Defendant Wills being "investigated" (*Id*. at p. 2). Daniels alleges that he has been assaulted several times, refused food, locked inside his cell, and denied medical treatment (*Id*.).

## ANALYSIS

Simply put, these allegations are new claims that are unrelated to the current claims in Daniels's lawsuit. Daniels continues to file "Notices" with the Court providing updates on his current condition within the prison, but his Complaint is solely about his placement in a condemned cell due to his failure to submit to a TB test (Doc. 6). His Complaint does not include his cell conditions in other areas of the prison, his placement in investigative status, or his interactions with other inmates. Although Daniels tries to tie recent attacks by other inmates to Warden Wills, who is a defendant in this case, there is simply no evidence in the record to suggest that Warden Wills orchestrated the attacks. Nor is there any indication that the attacks stem from the allegations in this lawsuit. These are all new claims that would require Daniels to file a new lawsuit.

Even if the allegations were part of the Complaint, Daniels does not specifically ask for injunctive relief and, if he did, he would have to demonstrate that he "has some likelihood of success on the merits" of his claims. *Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020). As previously stated, there is no evidence suggesting that Wills participated in the attacks, orchestrated the attacks, or was deliberately indifferent to Daniels's safety. In fact, Wills stated in his affidavit that the inmate who threw hot liquids on Daniels was

removed from the cellhouse and was no longer housed near Daniels (Doc. 107-1, p. 2). Further, Daniels acknowledged that he received medical care for his burns. And in his most recent "Notice," Daniels indicated that he was recently moved to investigative status due to concerns for his safety. Thus, it appears that Wills is taking the recent attacks on Daniels seriously. There is no evidence of deliberate indifference or retaliation by Wills other than Daniels's mere speculation.

To the extent that Daniels wishes to pursue any of these new claims, he would need to file a new lawsuit after first exhausting his available administrative remedies. He also may have other avenues of relief through the prison. Sara McClure testified that she recently met with Daniels, and he did not express any concerns for his safety or request protective custody (Doc. 107-5). His cumulative counseling summery also does not reflect any grievances regarding these most recent attacks, threats to his safety, or protective custody issues (Doc. 107-4). Daniels filed a grievance about missing property (Doc. 107-2). The grievance appears to note an "altercation," but he ultimately only requested the return of his property (*Id*. at p. 1). Daniels could file a grievance, speak with his counselor, or seek protective custody. But he has not demonstrated that injunctive relief is warranted on the claims currently in this case.

Finally, the Court notes that Daniels's various "Notices" are not a proper way to seek relief from the Court. To the extent that Daniels seeks injunctive relief or an Order from this Court in this case, he needs to file a proper motion setting forth his request for relief.

## CONCLUSION

For the reasons stated above, any request for relief in Daniels's recently filed Notices (Docs. 103, 105, 108) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:** March 7, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**