IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DARRIEN DANIELS,**<br><br>      **Plaintiff,**<br><br>v.<br><br>**ANTHONY WILLS, TYSON CHOATE, QUINN BAKER, KEN MODGELIN, and JAKOB UPTON,**<br><br>      **Defendants.** | **Case No. 23-cv-2061-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Darrian Daniels, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Daniels alleges the defendants acted with deliberate indifference when they placed him in a suicide cell without water and a working toilet, denied him access to the yard and showers, and denied his access to food trays.

This matter is currently before the Court on Daniels's Motion for Temporary Restraining Order (Doc. 112) and Motion to Supplement (Doc. 114). Defendants filed a response to the motion (Doc. 115). Daniels filed a reply brief (Doc. 116) and later filed a "Very Important Notice" (Doc. 117).

## BACKGROUND

### A. Procedural Background

Daniels's allegations in this case focus on the conditions of his cell in the North 2 Restrictive Housing Unit. Daniels was housed in the unit for his refusal to take a TB (tuberculosis) blood test. He previously filed a motion to be removed from segregation. That motion and a motion to reconsider were denied as moot when Daniels submitted to the TB test and was subsequently removed from segregation (Docs. 45, 94).

Daniels later filed notices with the Court requesting to be transferred from Menard due to threats from inmate workers (Docs. 97, 98, 101, 103, 105). He argued that an inmate worker threw hot food on him, causing burns. Another inmate worker later cut him with a knife (Doc. 109, p. 3). Although Daniels argued that Warden Wills orchestrated the two attacks, the Court found that the claims were unrelated to the claims in his current lawsuit (*Id*. at p. 5). The claims regarding his cell conditions in other parts of the prison, his placement on investigative status, and his interactions with other inmates also were unrelated to his original Complaint (Doc. 109, p. 5). Daniels argued that Warden Wills was behind all of the adverse decisions and attacks on Daniels, but the Court found no indication in the record that the attacks stemmed from the allegations in the original Complaint. Further, any allegations regarding attacks by other inmates would need to be raised in a new lawsuit (*Id*. at p. 6). After denying Daniels's motions for injunctive relief, Daniels filed another notice stating that his hearing aids had been confiscated by correctional officers (Doc. 110). The Court noted that Daniels's filing failed to request any relief and appeared unrelated to the claims in his lawsuit (Doc. 111).

### B. Motion for Injunctive Relief and Supplement (Docs. 112, 114)

Daniels subsequently filed the pending motion for temporary restraining order and preliminary injunction (Doc. 112). After filing his lawsuit, Daniels alleges that he started receiving threatening notes from Defendant Choate (*Id.* at p. 2). He also alleges that officials lied in previous filings about his access to the yard, and continued to threaten him if he did not return to segregation (*Id.* at pp. 2-3). He again notes the assault by inmate workers and alleges that mental health agreed that he should be single celled following the two attacks (*Id.* at pp. 3-4).

On March 5, 2024, Daniels was removed from his cell in investigative status to a holding cell for a shakedown. His hearing aids were confiscated (*Id.* at p. 5). He later received notes indicating the hearing aids were taken on Warden Wills's order. He was then returned to the West Cellhouse where he was previously assaulted by inmate workers, without his hearing aids. He acknowledges that he was initially single-celled, but on March 15, 2024, he learned from a correctional officer that another inmate was going to be moved into his cell (*Id.* at p. 6). Daniels protested, refused the cell assignment, and was ultimately sent to segregation for refusing to be celled with another inmate (*Id.*).

Daniels alleges that Warden Wills continues to retaliate against him. In a subsequent notice to the Court (Doc. 114), he alleges that Defendant Wills's previous responses contained fabricated documents and statements. He also alleges that he was missing property after his transfer from segregation and property sheets, filed by Wills in response to his previous motion, were completely fabricated (*Id.* at p. 2; Doc. 107-2).

3

He also alleges that previous medical records about a 2019 TB shot were also fabricated (*Id*. at p. 3).

### C. Defendants' Response

On March 26, 2024, the Court ordered Defendants to respond to Daniels's motion regarding acts of retaliation taken against Daniels, as well as his access to his hearing aids. As to the access to his hearing aids, Defendants argue that the hearing aids in Daniels's possession did not belong to him. Defendants offer the affidavit of Menard's ADA Coordinator Joleen Klump (Doc. 115-1). Klump stated that on March 5, 2024, Daniels requested that his hearing aids be fixed because he was unable to hear (*Id*. at p. 1). Klump reviewed his medical records and noted that a licensed audiologist had determined in 2019 that Daniels was *not* hard of hearing (*Id*.) (emphasis added). Klump then contacted the audiologist, who subsequently contacted the manufacturer regarding the serial number found on Daniels's hearing aids (*Id*.). The audiologist determined that, based on the serial numbers, the hearing aids were not assigned to Daniels but instead belonged to another inmate in custody. That inmate had reported missing his hearing aid upon his transfer to another facility (*Id*.). The hearing aid was transferred to its assigned owner, and Daniels was not given a hearing aid. Klump stated in her affidavit that Daniels did not qualify for any ADA accommodations for his hearing based on his previous hearing test results (*Id*. at p. 2).

As to threats from other inmates, Defendants argue that Daniels is no longer in the West Cellhouse. As Daniels stated in his motion, Daniels refused housing with a cellmate and was placed in segregation for one week (Doc. 115-2). Daniels was released from

segregation and placed in North 2, 7 gallery, a general population gallery. The gallery is offered yard three times per week (Doc. 115-3).

### D. Daniels's Reply and Additional Notice

In response to Defendants' brief, Daniels filed a brief arguing that Joleen Klump's affidavit was false and she was clearly a "corrupt staff" member Doc. 116). He argues that the hearing aids were his all along. Daniels also argues that it is impossible to take another inmate's hearing aids because the hearing aids need new batteries every week, and he would not have been able to receive weekly battery changes if the hearing aids were not registered to him (*Id*. at p. 2). He further argues that the hearing aids do not have serial numbers (*Id*.).

Recently, Daniels filed a "Very Important Notice" stating that inmate workers in North 2 started threatening him with harm (*Id*. at p. 117). He alleges that they walk past his cell with knives and threaten to injure him if he leaves his cell (*Id*. at p. 1). He also alleges that he is not housed on a general population gallery as Defendants previously alleged in their response. Instead, the gallery is a workers gallery filled with inmate workers. He alleges his current placement puts him in danger due to previous threats from, and attacks by, inmate workers (*Id*.). He again asks to be removed from Menard.

## LEGAL STANDARDS

A temporary restraining order may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b)(1)(A). Such injunctive relief is also warranted "to

5

prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). The same legal analysis is used to determine whether a TRO or a preliminary injunction is warranted.

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether plaintiff's claim "has some likelihood of success on the merits." *Mays v. Dart,* 974 F.3d 810, 822 (7th Cir. 2020). Once a plaintiff has met his burden, the Court must weigh "the competing harms to the parties if an injunction is granted or denied and also consider[] the public interest." *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Id*. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). A request for a mandatory

injunction like the one requested by Fletcher-Bey, which requires "an affirmative act by the defendant", are "ordinarily cautiously viewed and sparingly issued." *Mays*, 974 F.3d at 818 (quoting *Graham v. Medical Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997)). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

## DISCUSSION

Simply put, Daniels's allegations, much like the allegations in his previous motion for injunctive relief, are unrelated to the current claims in this lawsuit. Daniels once again alleges that he was attacked by inmate workers while housed in the West Cellhouse and faces threats from inmate workers while in North 2's general population gallery. But as noted in the Court's previous Order denying Daniels's request for injunctive relief (Doc. 109), these new claims are unrelated to the claims in this lawsuit. The only claim before the Court in this case is an Eighth Amendment deliberate indifference claim based on the conditions of the cell Daniels was placed in after refusing a TB test (Doc. 6, p. 6). Claims regarding attacks by other inmates or alleged retaliation by Defendant Wills are unrelated to the claims in this lawsuit, and Daniels has not submitted any tangible evidence suggesting that these attacks or threats were orchestrated by Wills.

Daniels's new arguments for injunctive relief, including his claim that his property and hearing aids were taken, are also unrelated to the claims in this lawsuit. Although there appears to be some dispute as to whether Daniels was assigned hearing aids, his allegations that they were improperly confiscated is unrelated to the conditions of his cell

7

in the North 2 Restrictive Housing Unit. There is also scant evidence that the confiscation of the hearing aids was an act of retaliation by Defendant Wills. Daniels offers only his own belief and speculation without any tangible evidence. Further, he argues that Defendants and their witnesses have lied and fabricated evidence, but he fails to offer any evidence to refute Defendants' evidence. To the extent that Daniels believes that his hearing aids were inappropriately confiscated or that the actions of staff were in retaliation for protected conduct, he would need to file a new lawsuit. He cannot pursue these new claims in this case.

Finally, as the Court has previously reminded Daniels, his various notices, including his most recent "Very Important Notice" (Doc. 117), are not the proper procedure for seeking relief from the Court. To the extent he seeks additional relief for the specific claims in this case, he would need to file a proper motion.

### Conclusion

For the reasons stated above, Daniels's motion for TRO and preliminary injunction (Doc. 112), as well as any request for relief in his motion to supplement the record (Doc. 114) and notice (Doc. 117), are **DENIED**.

**IT IS SO ORDERED.**

DATED: May 7, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**